Good morning, Your Honors. Matt Campbell from the Federal Defenders of Eastern Washington and Idaho on behalf of Ms. Haynes, and I will be trying to reserve three minutes for rebuttal. The sentencing guidelines establish a presumptive method for computing tax loss, which is 20% of gross revenue. The guidelines state that that method shall be used unless a more accurate method is demonstrated. The burden is on the government to demonstrate the amount of loss, and therefore the accuracy of method, and the government failed to carry its burden. Here, the district court procedurally erred in utilizing the government's direct method of computing the applicable tax loss instead of using the presumptive method in the sentencing guidelines. The government's method and resulting computations were neither accurate nor reliable. Different government agents performed different analyses and their results differed by hundreds of thousands of dollars. There was no reasonable explanation offered as to why different agents couldn't come to a consensus as to the amount of tax loss or even as to the proper methodology. Numerous agents made an error of $176,000, which was only corrected when the defense expert corrected that error. Although that error wasn't based upon the method of calculation. It was based on money that had already been paid. Am I understanding that right? Factually, that's correct, Your Honor. However, we do believe that to some extent it did reflect on the methodology. The methodology being that the government simply expended a great amount of time trying to find possible income and spent virtually no time looking for deductions or credits. We believe that is part of the methodology in this case. The district court also procedurally erred in failing to explain its decision, which affects our ability now and the ability of this court, we believe, to go back and analyze the accuracy of the government's calculations. The court didn't explain why it found the government's to be more credible, nor did it ultimately explain the sentence issued. Because the sentence is based on an incorrect calculation of guidelines, the sentence is unreasonable, and we also believe the restitution order is unreasonable because it was based on the same errors in calculations. Turning to guideline 2T1.1C2, it states that the tax loss is the amount of tax the taxpayer owed and did not pay. And our position is that the taxpayer didn't owe more than what their appropriate income minus deductions and credits would have been. The tax loss must include applicable deductions, which would serve to lessen the amount of taxes owed. Any conclusion otherwise allows the government, in essence, to achieve a windfall by ascribing to Ms. Haynes money that she simply didn't owe. If the offense involves a failure to file a tax return, the tax loss shall be treated as equal to 20 percent of the gross income, less any tax withheld or otherwise paid, unless a more accurate determination of the tax loss can be made. So in addition to the fact that it is mandatory, it shall, unless a more accurate determination can be made, we believe that the more accurate determination must be referred to the methodology as well as the reasonableness of the evidence behind it. The guidelines note that in some cases a reasonable estimation may not be ascertainable. The commentary to that guideline specifically states that. So there is no requirement that a reasonable estimation be made. In such cases, the simple answer is to use the 20 percent figure. Here, as stated, a more accurate determination would likely involve deductions. The United States v. Gordon case out of the Second Circuit explains that. Can I ask you a question? Sure. You gave sort of as, I don't know, a model, an example of what the 6 percent that your client had used the last time there was. If you took that 6 percent for the years involved, how much of a deduction would that have been? Would that have even, I mean, if you deducted the 6 percent, wouldn't the government's method be closer to that, the 20 percent? Without having run the specific numbers in my head, Your Honor, I nevertheless would say that if you used a 6 percent deduction, as was done on the, I believe it was the 1999 1120S, that likely would lead to a result closer to the government's figure than the 300 plus figure. I'd say they were substantially closer, and therefore the government's figure was more reasonable. Again, you're accepting the point that the 6 percent figure would lead to a number closer to the government's figure. Nevertheless, our first point is that one must look at the total methodology used. And, for example, in addition to the 6 percent figure, Agent Killingsworth, the agent who testified for the government, never sought out any state court tax payments. So the record is silent as to whether, in fact, there were state court tax payments that would have also been allowed to be a deduction. That would be a deduction over and above the 6 percent business figures. So admitting what Your Honor is asking, I nevertheless would say that there were other aspects of the methodology that would create further inaccuracies. And there is the testimony on the record of Professor Gellner who explained that, in essence, one needs to consult with the individual taxpayers in order to ascertain any sort of relatively reasonable estimate. And the reason for that, and she explained in detail, was that the failure to do so just fails to account for the fact that it often costs money to make money. We simply don't know how much money was paid to make the money that the government ascribed here to the clients. Now, the money was coming in largely from royalties, isn't that right? Yes, that is correct. Nevertheless, there were other expenses that had been claimed regularly. But typically, if you're making your money from royalties, the front-end expenses were earlier when you were making whatever it is that's subject to the royalty. Correct, Your Honor. We're not disputing that fact. Again, our main focus is on the overall methodology, which seemed to be heavily weighted in this case to ascribe as much income as possible with as few deductions and credits as possible. And unless there are any questions at the moment, I'll reserve the remainder. Thank you. May it please the Court, George Jacobs on behalf of the United States. Your Honors, Judge Quackenbush, his findings that the tax loss in this case, the 1999 to 2003 tax loss of $833,752, that was a reasonable estimate based on the available facts presented at the sentencing hearing. 2T1.1CT states that in a failure-to-file case, the tax loss is 20% of gross income unless a more accurate determination can be made. And I point the Court, I cited these two cases in my brief, United States v. Bishop and United States v. Yip. The court is not, the sentencing court is not to play Monday morning tax advisor. The expenses, the deductions that the defense is claiming should have been included to reduce the tax liability, they're speculative. Well, Yip had to do with where you fail to claim the deduction on a return you file. This is a no-filing case, so it's not, it's difficult to apply that. If there's a no-filing case, whose obligation is it to show that there should have been deductions if there had been a filing? Your Honor, based on the Bishop case, it would have been Mrs. Haynes' burden to prove the appropriateness of those itemized deductions. That's based on the United States v. Bishop and United States v. Yip. Thank you. Thank you, Your Honor. If there are no further questions, I will, the United States will rest on its brief. Thank you. Thank you, Your Honor. I'll be brief. In regard to the Bishop case, I believe we simply have a different reading of that case. I believe that Bishop suggests that in that case the defendants did not actually prove that they were entitled to any previous unclaimed tax benefits. Here our position is that Mrs. Haynes at least brought forth the fact that in previous years she had the 6% figures. So even accepting arguendo that she's required, which we don't, to make that showing, she did suggest that there were deductions and that those deductions were not applied. Even if that doesn't affect the ultimate guideline determination, it does affect a restitution amount. So we do believe that under Bishop she did bring forth some evidence, although ultimately our position is that it's the government's burden to demonstrate the amount of tax loss. You know, I think that my calculations are right. I don't think you have a lot at issue or at stake in the 6% deduction. As I suggested before, I think with the 6% deduction the government's figure is far more accurate than the 20%. But even if you're right, the restitution won't get you a lot. I think a more important question is you suggest you don't agree that it's your client's burden to come forth with the deductions. And if all she came forward with is the 6%, it's not going to help you a lot in the outcome. No, Your Honor, but again, there was the issue of state tax liability payments. Well, that's the question. Whose burden is it to say these are the deductions? And you say you don't agree with the government that it's your burden. You don't agree with their interpretation of Bishop. That's correct, Your Honor, because ultimately in regard to sentencing guideline calculations and improving the base offense level for a given offense, it's been held to be the government's burden. And I know I'm losing time. The last thing I wanted to point out is the government did state that Ms. Haynes' assertions were speculative. And as we discussed in the briefs, and I just asked the court to review those in this regard, that the reason to the extent they were speculative, they were speculative because the government chose not to try to substantiate those. Agent Killingsworth stated that the business expenses were unsubstantiated. That's in her testimony. Presumably the government would be the only one who could arguably substantiate them. She had filed the forms. That's all that's required in a self-reporting situation. So we don't believe that the argument that they were unsubstantiated holds water.  Case just argued will be submitted.
judges: Reinhardt, Fletcher W. , Rawlinson